## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL ACTION** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **TYRONE O. BRYANT** | **:** | **NO. 96-545-1** |

### MEMORANDUM

**Savage, J.**                                                                          **May 1, 2024**

### Background

Relying on his compliance with the terms of supervision, commitment to family, and steady work with the prospects of advancement, Tyrone Bryant moves for early termination of supervised release.[1] The government opposes his request. It cites the seriousness of his drug trafficking conviction and the ability to alter the conditions of his supervised release instead of termination.[2] After considering the submissions and the sentencing factors under 18 U.S.C. § 3553(a), we shall grant the motion.

### Criminal History

On February 4, 1997, a jury convicted Bryant of trafficking crack cocaine in violation of 21 U.S.C. § 841(a)(1). On July 31, 1997, he was sentenced to life imprisonment to be followed by ten years of supervised release. His status as a career offender drove his lengthy sentence. Following the passage of the First Step Act of 2018,

---

[1] Def.'s Suppl. Mot. For Early Termination of Supervised Release Pursuant to 18 U.S.C. § 3583(e)(1), ECF No. 179 ["Suppl. Mot."].

On April 11, 2023, Bryant wrote a letter requesting early termination of his six years of supervised release. Bryant Letter Request For Early Termination, ECF No. 176 ["Bryant Letter"]. The following day we appointed the Federal Community Defender Office to represent him. Order, Apr. 12, 2023, ECF No. 177. On July 20, 2023, Bryant's attorney filed a supplemental motion for early termination for supervised release. *See* Suppl. Mot.

[2] Gov. Resp. at 2-3, 5, ECF No. 181 ["Resp."].

we reduced Bryant's sentence to time served to be followed by a term of supervised release of six years.

At his resentencing hearing on July 10, 2019, we commended Bryant for obtaining a GED and gaining job and life skills through the prison courses available to him. He overcame falling into the hopelessness of a mandatory life sentence. He made an impressive contribution as a mentor to other prisoners, showing them how to cope, improve and make a difference. Statements from other prisoners attested to Bryant's positive impact on them.

Bryant was released on July 10, 2019. He has completed four years and nine months of supervised release without incident.

**Analysis**

A court may, in its discretion, terminate a term of supervised release after one year if termination is warranted by the defendant's conduct and is in the interest of justice. 18 U.S.C. § 3583(e)(1). Before doing so, the court must consider the sentencing factors set forth in § 3553(a). Despite the statutory mandate that a court consider all § 3553(a) factors, the Third Circuit Court of Appeals has held that the need for a sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment is not relevant to the consideration of early termination of supervised release. *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012).

Supervised release is not intended to be a form of punishment. It is meant to assist the defendant integrating into the community. It is a form of rehabilitation. *United States v. Sheppard*, 17 F.4th 449, 454 (3d Cir. 2021); *Murray*, 692 F.3d at 280.

Bryant argues that supervised release does not provide him with any necessary educational or vocational training, medical care, or correctional treatment. On the contrary, he asserts that the travel restrictions imposed by supervised release impede his job advancement and his ability to attain better positions with his employer. Citing other district courts, he argues that the "interest of justice also would be served … where the defendant has maintained compliance but further supervision would impede his ability to remain gainfully employed or seek job advancement."[3]

Bryant also argues that he is "sufficiently deterred from committing future criminal acts and poses a very low risk to the public."[4] He points to his classification as a low/moderate risk level offender and his age, at 57, placing him in a group least likely to recidivate.[5]

Because a similarly situated defendant sentenced today would face the same period of incarceration and supervised release term that Bryant has already served, he argues that early termination is warranted under sentencing factors 18 U.S.C. §§ 3553(a)(4) and (6).[6]

Probation Officer Cassie Musselman has confirmed that he is in full compliance with the supervision conditions.[7] She supports his request for early termination.

---

[3] Suppl. Mot. at 7. Bryant cites to the following District Court cases: *United States v. Harris*, 689 F. Supp. 2d 692, 696 (S.D.N.Y. 2010); *United States v. Etheridge*, 999 F. Supp. 2d 192, 199 (D.D.C. 2013); *United States v. Walters*, No. 4:20-CR-00184-BLW, 2021 WL 4991510, at *1 (D. Idaho Oct. 27, 2021); *United States v. Bennett*, No. 11-CR-424 (AMD), 2021 WL 4798827, at *1 (E.D.N.Y. Oct. 14, 2021); *United States v. Nicholson*, No. 10-CR-00328-JSW-1, 2021 WL 4077090, at *2 (N.D. Cal. Sept. 7, 2021); *United States v. Beckham*, No. 16-CR-00175-CRB-1, 2021 WL 2651300, at *2 (N.D. Cal. June 28, 2021); *United States v. Wright*, No. 2:13-CR-00077-BLW, 2015 WL 7013298, at *2 (D. Idaho Nov. 12, 2015). *Id.* at B.

[4] Suppl. Mot. at 7.

[5] *Id.* at 3, 5

[6] *Id.* at 3-4.

[7] *Id.* at 1.

Finally, Bryant points to his family support. He lives with his 76-year-old mother, spends "priceless" time with his children and grandchildren, and is engaged to be married.[8]

The government argues that terminating supervision is "extreme in light of his original sentence."[9] It argues the relief he seeks—the ability to travel to work locations outside the district—could be achieved by altering the conditions of his supervision, rather than termination.[10] It disputes that Bryant is "unduly harmed" by losing overtime opportunities because he could not get permission to travel quickly enough.[11] The "obvious remedy," the government asserts, is to "work with probation and the Court to adjust the conditions of his release so that he can travel" to work locations.[12]

Bryant has demonstrated remarkable rehabilitation in prison and on supervised release. He has served over two-thirds of his supervised release, complied with the terms of supervision, paid his court costs in full, maintained stable housing, and receives accolades at his job. He is a gainfully employed union worker in the Philadelphia Water Department. His supervisor, Delresea Huzzy wrote:

> Mr. Bryant joined the Philadelphia Water Department in November 2021. On the first day he was prepared and ready to work. He has been a model employee to date. He has been a positive influence on his fellow coworkers and has shown great leadership ability. He's a very hard worker and doesn't mind getting dirty. Basically, his work ethic is to be applauded because he's consistent and dependable. Mr. Bryant is a vital asset to his crew and the community in which we serve. We look forward to his continue success here and were glad to

---

[8] *Id.* at 4; Bryant Letter.

[9] Resp. at 2.

[10] *Id.*

[11] *Id.* at 5.

[12] *Id.*

have him aboard.

By allowing Bryant to advance in his career, early termination would serve the interests of justice. While on supervised release, he is unable to take jobs with overtime pay that require travel to other counties.[13] He is in the process of obtaining his Commercial Driver's License (CDL), which will enable him to get higher-paying work as a driver for heavy trucks and operator of excavators.[14] To do this work, he needs to travel "unencumbered and at a moment's notice."[15]

Having considered the statutory factors under § 3553(a) and Bryant's conduct and the interests of justice, we shall grant his motion of early termination of supervised release.

---

[13] Suppl. Mot. at 4.

[14] *Id*. at 4-5.

[15] *Id*. at 5.